CAPE GIRARDEAU v. BUEHRMANN, Appellant.

### Division Two, February 21, 1899.

1. **City Taxes:** ASSESSMENT: SPECIFIC PROPERTY OMITTED. The "back" assessment of personal property, when compared with the list for the alleged omitted year, should show on its face the specific property omitted, and unless it does so it is void. Defendant's estate was described as "personal property" taxed for $35.87, and afterwards, the assessor, without notice and without discovering any specific personal property omitted from the list, made a "back assessment" against the personal estate for the same fiscal year of $6,300, and the city taxes on this, when extended by the city register, amounted to $110.25. *Held*, that the "back assessment" was void.

2. ———: ———: ABSENT OWNER: NOTICE: COPY OF ASSESSMENT. If the assessor fails to leave with the absent owner the written or printed notice, required by section 7532, Revised Statutes 1889, or fails to leave with his family a duplicate list of the assessment as therein required, the assessment made by him "on his own view or the best information he can obtain," is illegal; and in such case a suit for taxes, bottomed on the condition precedent that the assessor had performed his duty, must fail.

*Appeal from Cape Girardeau Court of Common Pleas.*
HON. ALEXANDER ROSS, Judge.

REVERSED.

ROBERT L. WILSON for appellant.

(1) The trial court erred in not sustaining appellant's objection to the introductions of any evidence in behalf of plaintiff. The petition did not state a cause of action, and said action was prematurely brought, being brought within four months after the taxes became delinquent. The charter and ordinance of plaintiff requires that no suit for delinquent taxes should be brought within twelve months after they became delinquent. R. S. Ord. Cape Girardeau, sec. 60; Heard v. Ritchey, 112 Mo. 516; Turk v. Stahl, 53 Mo. 437;

Duryee v. Turner, 20 Mo. App. 34.    (2)    There was no valid
assessment, no notice having been given to the absent tax-
payer that he had been assessed by leaving a copy of the as-
sessment with some member of his family over the age of
fifteen years.    R. S. 1889, secs. 1902 and 6567; Rich Hill
Mining Co. v. Neptune, 19 Mo. App. 438.    (3)    Defendant
was not personally liable for the payment of taxes of said
estate.    Woodworth v. Woodworth, 70 Mo. 601; Byerly v.
Donlin, 72 Mo. 270; Yeoman v. Younger, 83 Mo. 424.
(4)    The bonds of the city were not liable to assessment.
Macon v. Jones, 67 Ga. 489; Miller v. Wilson, 60 Ga. 505;
Augusta v. Dunbar, 50 Ga. 387; Buffalo v. Courtelinx, 15
N. Y. 387.

SAM. M. GREEN and B. F. DAVIS for respondent.

(1)    The attention of this court is respectfully called to
the assessor's testimony about calling at the business house of
appellant to get his assessment of the estate of his testatrix,
and that he more than once left assessment blanks with in-
structions.    The trial judge saw and heard this witness and
found for the respondent. The case of State ex rel. v. Spen-
cer, 114 Mo. 574, quoted by appellant, has no application here,
as, in that case, the lists were returned to the assessor himself
by the owner, and the valuation raised without notice. Here
there was no appeal and no raising of assessment.    The ap-
pellant utterly fails to show any remissness on the part of the
assessor to perform the duties required of him by law, and the
presumption is that he did his duty. State ex rel. v. Wayne
Co., 98 Mo. 362.    (2)    It should be noted that the supple-
mental assessment was made of normal school bonds "discov-
ered" since the first assessment and not that already assessed,
taxed and paid, but other and entirely different personal
property.    (3)    The objection urged by appellant that the
failure of the assessor, in the absence of the head of the
family, to leave a duplicate list with some member of the

family over the age of fifteen years, is not tenable, because it was not shown that he did not furnish a member of Buehrmann's family over the age of fifteen years with a copy of the assessment. The presumption obtains that public officers do their duty. State ex rel. v. Wayne Co., 98 Mo. 362.

GANTT, P. J.—This is an action for city taxes and involves a construction of the revenue laws of this State, and appellate jurisdiction is thereby conferred upon this court.

The city of Cape Girardeau at the time of the commencement of this action was a city organized under a special charter approved March 29, 1872 (Laws of Missouri 1872, p. 328), and as such had power to levy and collect taxes not exceeding three-quarters of one per cent per annum upon all property, real, personal or mixed, taxable by law for State and county purposes. [Art. 3, sec. 1, Act of 1872, p. 332.]

Annetta Buehrmann was a resident of said city prior to March, 1889, and during said month died in said city, testate, leaving a last will by which she appointed defendant, Otto Buehrmann, her executor. On March 28, 1889, he qualified and took charge of her estate, which consisted of a few personal effects, household furniture, a few notes of small amounts which she held against her legatees, and eighteen bonds of the city of Cape Girardeau, each of the par value of $500 and bearing eight per cent interest, aggregating at that time $9,000 principal, and $1,080 interest, total $10,080. These bonds were issued and bore date 1873 and were payable thirty years after date, or in 1903.

They were known as "normal school bonds," and were issued by said city for the purpose of procuring the location of the Southeast Missouri Normal School in said city. The executor consumed all the personal estate except these bonds in paying allowances, taxes, and costs of administration. He duly advertised for his final settlement at the May term, 1891, of the probate court of said county. At said May term, on

May 25, 1891, the executor filed his final settlement, which seems to have been amended at the October term, 1891, and the estate distributed and vouchers filed. The final order of discharge was made January 6, 1892.

This action is brought against the defendant in his individual capacity on an implied obligation. The city does not seek to charge the estate.

The fiscal year of the city of Cape Girardeau begins on the first Monday in May of each year and ends the first Monday in May of the succeeding year.

The defendant produced the receipt of the city collector, dated April 20, 1891, for the city taxes on the estate of Annetta Buehrmann for the fiscal year ending the first Monday in May, 1891, amounting to $35.87½. The petition contains two counts. The first count is for the taxes of the fiscal year 1891, and the second for the fiscal year 1892.

The allegations of the first count are to the effect that it was the duty of defendant to return to the assessor the personal property of said Annetta's estate in his hands, his neglect to do so, and that because of said neglect the assessor on the seventeenth day of June, 1891, "did assess back" the said personal estate for the fiscal year ending first Monday in May, 1891, to be of the value of $6,300, and thereupon in accordance with certain ordinances of said city, taxes were extended on said personal property by the city register to the amount of $110.25.

It is further alleged that the said taxes became delinquent on May 1, 1891, and defendant became liable to pay interest on the same at rate of one per cent per month from and after May 1, 1891; "that said defendant after said taxes became due and delinquent failed, neglected and refused to pay the same or any part thereof, without any demand therefor being presented to the court having competent jurisdiction for allowance thereof or in any other way as it was his duty to do, in accordance with the statutes in such cases made and provided."

The second count is of like tenor and effect save that it seeks to collect the taxes assessed for 1892 for the fiscal year ending May 1, 1892, amounting to $157.50. It appears that the executor paid the State and county taxes for the year 1890 on the basis of a valuation of $6,300.

I.   Disposing of the taxes for the two years separately, that of 1891 presents this feature. It is conceded and established that Mrs. Buehrmann's estate was assessed for the fiscal year ending May, 1891, and the city taxes levied for that year amounted to $35.87½, which the executor paid April 20, 1891. It is contended that, when the assessor concluded he had not assessed all of the taxable property of the estate and determined to assess back for that year, he gave the executor any notice of his intention to do so.

The ordinance of the city provided that, "If by any means any personal property as contemplated by this ordinance, or any lot or part of lot or tract or part of tract of land, shall be omitted in the assessment of any year or series of years and not put upon the assessor's book, the same when discovered shall be assessed by the assessor for the time being and placed upon his book with all arrearages of taxes which ought to have been assessed and paid for in former years charged therein." The first assessment of Mrs. Buehrmann's estate for city taxes of 1891 described the personal estate merely as "personal" property. There was nothing to indicate whether it consisted of live stock, furniture or bonds or notes.

No objection was made to that assessment by the assessor and it passed the board of equalization for that year without challenge. Having been finally received it formed the basis of the taxes to be extended thereon for that year. Had it been grossly excessive and no complaint had been made to the board of equalization, it would have been final as to the executor. Can it be true that an assessor can adopt this method of rectifying his valuation, while the taxpayer is denied relief

because he did not appeal or seek relief from the board of equalization? It affirmatively appears from the testimony of the assessor that he did not discover any specific property which he had omitted from his assessment in 1891 but simply took his total of $6,300 for his "back assessment," from the county clerk. It is apparent he could have obtained this information as readily in 1891 before completing his valuation as he did after his roll had been 'returned, the levy extended and the tax paid. To permit such a practice to obtain would work great confusion. The assessor is required to make his valuation of property when he receives the list or makes it upon his own information. "If the taxpayer himself does not appeal he has.the right to suppose that the assessment will be allowed to stand as made." [Cooley on Taxation (2 Ed.), 420; Rich Hill Mining Co. v. Neptune, 19 Mo. App. 442; State ex rel. v. Spencer, 114 Mo. 578.]

No doubt if specific real property is overlooked or omitted it can be subsequently assessed for the previous omitted years, but can it be said the personal estate was omitted when as in this case a lumping assessment is made in one year and the taxes extended and paid, and the next year another equally general description is made the basis of a back assessment, only increased in amount. How can it be known that the same property is not at least partially assessed twice for the same year. This is not a technical reassessment but is the ex parte act of the assessor only, correcting his first assessment, without notice to the taxpayer, and without opportunity to be heard before the board of equalization.

This ordinance permits the assessor, not the county clerk, to extend the arrearages of taxes. The general statutes of the State only permit this back assessment of real estate and they govern in the city as well as the county. [R. S. 1889, sec. 1902.] But conceding that the ordinance is valid still we think the back assessment when compared with the alleged omitted year should show on its face the specific property

omitted, and unless it does so it is void. It necessarily follows that without reference to other points raised, the so-called back assessment for the year 1891, did not constitute any ground of liability and the court erred in not sustaining the objection to the evidence of plaintiff and in not finding for defendant on said count.

II. Was the allegation of an assessment for the fiscal year 1892 sustained by the evidence?

Plaintiff introduced the city assessor, William Willer, and he testified as follows: "I am assessor of the city of Cape Girardeau and have been since 1887. I called at Otto Buehrmann's business house in the latter part of May, 1891. I went to get his assessment, and the assessment of the estate of Annetta Buehrmann of which he was executor. He was not there and I called two or three days afterwards to get said assessments. He still was absent. I left assessment blanks, with instructions to give in his assessment in ten or fifteen days. He never gave in his assessments as required, and I made them out myself. (Witness identified assessment list). The assessment period in 1890 commenced the first day of June, 1890, and the assessment period in 1891 commenced the first day of June, 1891. (The assessment lists were then offered showing the same amount as set forth in plaintiff's petition). I got the $6,300 assessed for 1890 from the county clerk. The $9,000 assessment for 1891 I got from Otto Buehrmann's final settlement as executor of the estate of Annetta Buehrmann, deceased, filed in the common pleas clerk's office. I made my own view of the matter. On the 19th day of June, 1891, I made the assessments for 1890 and 1891, on the same day, that is on the 19th day of June, 1891. (Witness then identified personal assessment book of plaintiff for year ending May 1, 1891, also the assessment book for fiscal year ending May 1, 1892, showing for back assessment for 1890 the sum of $6,300, and for 1891 the sum of $9,000). After I made the assessment I put it on the assessment book

and turned it over to the city register. I gave no notice of equalization. There was a board and it was my duty to be present. I don't remember of being present." Defendant objected to the testimony of said W. H. Willer because there was no legal assessment made, which objections were by the court overruled, and evidence admitted, to which ruling of the court, defendant at the time objected and excepted.

As already observed the statutes of the State regulate and control assessments in the cities of the State. [R. S. 1889, sec. 1902.]

The ordinance of Cape Girardeau conformed to the statute in this, that both the statute, section 7531, and ordinance 379, approved April 29, 1882, made it the duty of the assessor to call at the office, place of business, or residence of each person required to list property and require such person to make out a true list and make affidavit thereto, and the ordinance, section 7, and the statute, section 7532, provide, that if the person whose duty it is to make such list be absent when the assessor calls, "the assessor shall leave at the office or usual place of residence of such person, a written or printed notice requiring such person to make out and leave at the place named by the assessor on or before some convenient day, named therein, not less than ten days nor more than twenty, a sworn statement of his property and shall leave with such notice a blank for such list, and if such person shall neglect or refuse within the time designated to deliver such statement, then the assessor shall make such assessment on his own view or the best information he can obtain." Now, it is absolutely certain that the assessor did not leave the printed or written notice required by this statute and ordinance. He simply left the blank with verbal instructions for defendant to bring his assessment in ten or fifteen days.

Defendant not having received any notice, did not make out the list and thereupon the assessor made out one. Now the law also required that, "Whenever an assessment of property is made in the absence of the head of the

family, a duplicate list of the assessment shall be left with some member of the family of not less than 15 years of age, and shall deliver a copy of the assessment to the owner at the time of making the said assessment if demanded by such owner." [R. S. 1889, sec. 7567.]

The assessor left no copy of his assessment with any member of defendant's family. This is a substantial right secured to the citizen and we have no disposition or right to construe it out of the statutes. To neglect it is to ignore the right of a taxpayer to seek to redress if the assessment is unjust.

As this count is bottomed upon the condition precedent that the assessor had performed his duty and as he utterly failed therein, it is obvious this count also is not supported by the evidence.

The judgment of the circuit court is reversed.

SHERWOOD and BURGESS, JJ., concur.

